**Electronically Filed
Intermediate Court of Appeals
28569
27-JAN-2012
08:08 AM**

NO. 28569

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellant,
v.
GLEN MURRAY, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 03-1-1848)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Leonard, JJ.)


Plaintiff-Appellant State of Hawai'i (State) appeals from an order issued by the Circuit Court of the First Circuit (Circuit Court)[1] dismissing, without prejudice, the indictment against Defendant-Appellee Glen Murray (Murray) for lack of jurisdiction. Murray was charged with second degree theft, in violation Hawaii Revised Statutes (HRS) §§ 708-830(2) and 708-831(1)(b) (1993), for obtaining workers' compensation benefits by deception. The Circuit Court dismissed the indictment on the ground that it lacked jurisdiction because the indictment involved a controversy and dispute arising under the Hawai'i workers' compensation law over which the Director of Labor and Industrial Relations (Director) has original jurisdiction. The Circuit Court ruled that it would only acquire jurisdiction over

---

[1] The Honorable Karl K. Sakamoto presided.

the indictment if the Director opted to forego pursuing administrative penalties for fraud available under the workers' compensation law.

On appeal, the State argues the Circuit Court erred in dismissing the indictment for lack of jurisdiction because: (1) the Director does not have original jurisdiction over criminal prosecutions arising out of a claim for workers' compensation; and (2) the Circuit Court was wrong in finding that Murray's prosecution involved the same benefits that were determined in his workers' compensation case.

As discussed below, we conclude that the Director does not have original jurisdiction over Murray's criminal prosecution and that the Circuit Court therefore erred in dismissing the indictment for lack of jurisdiction. We vacate the order dismissing the indictment and remand the case for further proceedings.

BACKGROUND

Murray was employed as a security guard by the State of Hawai'i, Department of Public Safety (DPS). He sought workers' compensation benefits for injuries to his right knee. The Director initially denied his claim. Murray appealed the Director's decision to the Labor and Industrial Relations Appeals Board (LIRAB). Applying the presumption of compensability, the LIRAB reversed the Director's decision in part. Although finding that the medial meniscus tear in Murray's right knee was not work related, the LIRAB further found that the DPS had failed to overcome the presumption that the lateral meniscus tear in Murray's right knee was work related.

Murray ended his employment with the DPS before the LIRAB's decision. Pursuant to the LIRAB's decision, the DPS began paying Murray temporary total disability (TTD) benefits. After paying Murray TTD benefits for over two months, the DPS stopped its payments when it learned that Murray was employed full-time. A hearing was subsequently held before the Director to discuss Murray's entitlement to TTD benefits. The Director

2

did not find that Murray was automatically ineligible for TTD benefits by virtue of his full-time employment as a security guard for Guardsmark. The Director found that Murray was eligible for temporary partial disability (TPD) payments because his wages at Guardsmark were less than his DPS wages.

The DPS appealed the Director's decision to the LIRAB and moved for a stay of the benefits the Director awarded to Murray. The LIRAB granted the stay motion in part. It stayed temporary disability benefits only for periods during which Murray was employed on a full-time basis, but not for any other periods for which Murray provided documentation of disability.

In the meantime, the State charged Murray by indictment with second degree theft for obtaining workers' compensation benefits, the value of which exceeded $300, by deception. The charge was based on the State's contention that Murray had obtained TTD workers' compensation benefits by deception for about a two-month period during which he had been working full-time as a security guard for Guardsmark.

Murray moved to dismiss the indictment. On May 4, 2007, the Circuit Court dismissed the indictment, without prejudice, pursuant to its "Findings of Fact, Conclusions of Law, and Order" (Order Dismissing Indictment). The Circuit Court concluded that pursuant to HRS § 386-73, the Director has original jurisdiction over all controversies and disputes arising under the Hawai'i workers' compensation law, HRS Chapter 386. HRS § 386-98 establishes criminal and administrative penalties for persons who engage in workers' compensation fraud, and it further provides that in lieu of criminal penalties, persons who commit workers' compensation fraud may be subject to administrative penalties.[2]

---

[2] The versions of HRS §§ 386-73 and HRS § 386-98 applicable to the Circuit Court's Order Dismissing Indictment are HRS § 386-73 (1993) and HRS § 386-98 (Supp. 2005). For purposes of our analysis, there are no material differences between the current versions of these statutes and the versions applicable to the Order Dismissing Indictment.

The Circuit Court concluded that the Director had original jurisdiction over the indictment because it involved a controversy and dispute arising under the workers' compensation law. In support of this conclusion, the Circuit Court found that the workers' compensation benefits allegedly taken as described in the indictment were the same benefits determined in Murray's workers' compensation case. The Circuit Court reasoned that because the Director had original jurisdiction, the Director had the power to decide whether to seek administrative penalties for Murray's alleged workers' compensation fraud before the State could pursue a criminal prosecution. The Circuit Court concluded that because the State had failed to secure the Director's rejection of the pursuit of administrative penalties against Murray, the State's criminal prosecution was premature. The Circuit Court ruled that until the Director opted to forego pursuing administrative penalties, the State could not pursue its criminal prosecution against Murray and the Circuit Court lacked jurisdiction over Murray's indictment. Accordingly, the Circuit Court dismissed the indictment without prejudice.

DISCUSSION

The State argues that the Circuit Court erred in dismissing the indictment for lack of jurisdiction. We agree.

I.

We review the existence of jurisdiction, which is a question of law, de novo under the right/wrong standard. Adams v. State, 103 Hawai'i 214, 220, 81 P.3d 394, 400 (2003). We construe statues according to the following principles:

> The interpretation of a statute is a question of law reviewable de novo.
>
> . . . When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Barnett v. State, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (internal quotation marks, citations, brackets, and ellipses

points omitted; block quote format changed). "[A] rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." State v. Lobendahn, 71 Haw. 111, 112, 784 P.2d 872, 873 (1989) (internal quotation marks, citation, and brackets omitted). "[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." Keliipuleole v. Wilson, 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997) (internal quotation marks, citation, and some brackets omitted).

II.

The following statutes are relevant to our analysis of the Circuit Court's ruling that it lacked jurisdiction over the State's criminal prosecution of Murray.

(1)  HRS § 603-21.5(a)(1) (Supp. 2010) provides that "except as otherwise expressly provided by statute," the circuit courts shall have jurisdiction of "[c]riminal offenses cognizable under the laws of the State" that were committed within the circuit or transferred for trial pursuant to a change of venue from another circuit court.

(2) Murray was charged with second degree theft, in violation HRS §§ 708-830(2) and 708-831(1)(b), which provide:

> **§ 708-830. Theft.**  A person commits theft if the person does any of the following:
>
> . . . .
>
> (2)  Property obtained or control exerted through deception.  A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.
>
> . . . .
>
> **§ 708-831. Theft in the second degree.**  (1) A person commits the offense of theft in the second degree if the person commits theft:
>
> . . .
>
> (b)  Of property or services the value of which exceeds $300[.]

5

(3)  HRS § 386-73 pertains to the jurisdiction of the Director over workers' compensation matters.  HRS § 386-73 (1993 & Supp. 2010) provides in relevant part: "<u>Unless otherwise provided</u>, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter."  (Emphasis added.)

(4)  HRS § 386-98 provides for criminal and administrative penalties for workers' compensation fraud.  HRS § 386-98 (a) and (b) (Supp. 2010)[3/] set forth the types of

---

[3/] HRS § 386-98(a) and (b) provide:

(a)  A fraudulent insurance act, under this chapter, shall include acts or omissions committed by any person who intentionally or knowingly acts or omits to act so as to obtain benefits, deny benefits, obtain benefits compensation for services provided, or provides legal assistance or counsel to obtain benefits or recovery through fraud or deceit by doing the following:

(1)  Presenting, or causing to be presented, any false information on an application;

(2)  Presenting, or causing to be presented, any false or fraudulent claim for the payment of a loss;

(3)  Presenting multiple claims for the same loss or injury, including presenting multiple claims to more than one insurer except when these multiple claims are appropriate and each insurer is notified immediately in writing of all other claims and insurers;

(4)  Making, or causing to be made, any false or fraudulent claim for payment or denial of a health care benefit;

(5)  Submitting a claim for a health care benefit that was not used by, or on behalf of, the claimant;

(6)  Presenting multiple claims for payment of the same health care benefit;

(7)  Presenting for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time;

(8)  Misrepresenting or concealing a material fact;

(9)  Fabricating, altering, concealing, making a false entry in, or destroying a document;

(continued...)

conduct that constitute criminal offenses. HRS § 386-98(d) (Supp. 2010) establishes the criminal penalties for the offenses set forth in HRS § 386-98(a) and (b) as follows:

> (d)    An offense under subsections (a) and (b) shall constitute a:
>
> (1)    Class C felony if the value of the moneys obtained or denied is not less than $2,000;
>
> (2)    Misdemeanor if the value of the moneys obtained or denied is less than $2,000; or
>
> (3)    Petty misdemeanor if the providing of false information did not cause any monetary loss.
>
> _Any person subject to a criminal penalty under this section shall be ordered by a court_ to make restitution to an insurer or any other person for any financial loss sustained by the insurer or other person caused by the fraudulent act.

(Emphasis added.)    HRS § 386-98(e) (Supp. 2005)[4] and (f) (Supp.

---

[3] (...continued)

> (10)    Making, or causing to be made, any false or fraudulent statements with regard to entitlements or benefits, with the intent to discourage an injured employee from claiming benefits or pursuing a workers' compensation claim; or
>
> (11)    Making, or causing to be made, any false or fraudulent statements or claims by, or on behalf of, a client with regard to obtaining legal recovery or benefits.
>
> (b)    No employer shall wilfully make a false statement or representation to avoid the impact of past adverse claims experience through change of ownership, control, management, or operation to directly obtain any workers' compensation insurance policy.

[4] HRS § 386-98(e) (Supp. 2005) provided:

> (e)    In lieu of the criminal penalties set forth in subsection (d), any person who violates subsections (a) and (b) may be subject to the administrative penalties of restitution of benefits or payments fraudulently received under this chapter, whether received from an employer, insurer, or the special compensation fund, to be made to the source from which the compensation was received, and one or more of the following:
>
> (1)    A fine of not more than $10,000 for each violation;
>
> (2)    Suspension or termination of benefits in whole or in part;
>
> (3)    Suspension or disqualification from providing medical care or services, vocational rehabilitation services, and all other services rendered for payment under this chapter;

(continued...)

2010),[5] in turn, provide for the imposition of administrative penalties in lieu of the criminal penalties.

### III.

We conclude that the Circuit Court erred in construing these statutes as meaning that it lacked jurisdiction over the indictment against Murray because the Director had original jurisdiction over criminal prosecutions arising out of a workers' compensation claim.  Under HRS § 603-21.5(a)(1), the circuit courts have jurisdiction over criminal offenses "except as otherwise expressly provided by statute."  Thus, the Circuit Court had jurisdiction over the indictment in this case unless it was expressly divested of jurisdiction by another statute.

In concluding that it lacked jurisdiction, the Circuit Court cited HRS § 386-73, the general grant of original jurisdiction to the Director over disputes and controversies arising under the workers' compensation law, and HRS § 386-98,

---

[4] (...continued)
    (4)    Suspension or termination of payments for medical, vocational rehabilitation and all other services rendered under this chapter;

    (5)    Recoupment by the insurer of all payments made for medical care, medical services, vocational rehabilitation services, and all other services rendered for payment under this chapter; and

    (6)    Reimbursement of attorney's fees and costs of the party or parties defrauded.

The current version of HRS § 386-98(e) is the same except that the "and" between subsections (e)(5) and (e)(6) has been replaced with an "or."  See 2005 Haw. Sp. Sess. Laws Act 11, § 11, at 820.

[5] HRS § 386-98(f) provides:

    (f)    With respect to the administrative penalties set forth in subsection (e), no penalty shall be imposed except upon consideration of a written complaint that specifically alleges a violation of this section occurring within two years of the date of said complaint.  A copy of the complaint specifying the alleged violation shall be served promptly upon the person charged.  The director or board shall issue, where a penalty is ordered, a written decision stating all findings following a hearing held not fewer than twenty days after written notice to the person charged.  Any person aggrieved by the decision may appeal the decision under sections 386-87 and 386-88.

which establishes criminal and administrative penalties for workers' compensation fraud.

Murray, however, was not charged with violating HRS § 386-98, but was charged with second degree theft by deception under HRS §§ 708-830(2) and 708-831(1)(b). Prosecutors have broad discretion in charging matters, including decisions on what charges to file. See State v. Radcliffe, 9 Haw. App. 628, 640, 859 P.2d 925, 932 (1993); State v. Kuuku, 61 Haw. 79, 83, 595 P.2d 291, 294 (1979) ("[W]here a single act violates more than one statute, the State may elect to proceed against the accused under either statute."). Because Murray was charged with theft under HRS §§ 708-830(2) and 708-831(1)(b), and not a criminal offense under the workers' compensation law, Murray's prosecution did not constitute a controversy and dispute arising under the workers' compensation law. See Hough v. Pacific Ins. Co., 83 Hawai'i 457, 465-66, 927 P.2d 858, 866-67 (1996) (holding that an employee's tort action alleging bad faith by a workers' compensation insurer in processing the employee's benefits claim did not arise under the workers' compensation law, and therefore, the Director did not have original jurisdiction over the bad faith tort action under HRS § 386-73).

Moreover, the grant of original jurisdiction to the Director under HRS § 386-73 is subject to the proviso that such jurisdiction is conferred "unless otherwise provided." We conclude that it is clear that the Director's lack of original jurisdiction over criminal prosecutions is "otherwise provided." The powers and duties of the Director under the workers' compensation law do not include the power to institute criminal prosecutions or impose criminal sanctions. As the Circuit Court acknowledged, the Director lacks the authority to hear criminal proceedings. In Tauese v. State, Dep't of Labor & Indus. Relations, 113 Hawai'i 1, 27, 147 P.3d 785, 811 (2006), the Hawai'i Supreme Court cited with approval the assertion of the Department of Labor and Industrial Relations (DLIR) that "it 'lacks jurisdiction in criminal proceedings.'"

Indeed, HRS § 386-98 itself acknowledges and provides that the Director does not have jurisdiction over the criminal offenses established by that section. HRS § 386-98(d) states that "[a]ny person subject to a criminal penalty under this section <u>shall be ordered by a court</u> to make restitution to an insurer or any other person for any financial loss sustained by the insurer or other person caused by the fraudulent act." (Emphasis added.) By acknowledging and providing that criminal penalties under HRS § 386-98 shall be imposed by a court, HRS § 386-98 "otherwise provide[s]" that the Director does not have original jurisdiction over criminal prosecutions under that section.

Construing HRS § 386-73 and HRS § 386-98 as conferring the Director with original jurisdiction over criminal prosecutions that involve workers' compensation claims would also be illogical and lead to absurd results. The Director does not have the power or authority to preside over criminal proceedings. It would serve no purpose to grant the Director with original jurisdiction over criminal matters that the Director has no power to institute or adjudicate. Because the Director lacks the authority to preside over criminal cases, we conclude that the Legislature could not have intended that the Director have original jurisdiction over criminal prosecutions involving workers' compensation fraud.[6]

IV.

In light of our determination that the Circuit Court erred in dismissing the indictment for lack of jurisdiction, we need not address the State's argument that the Circuit Court erred in finding that Murray's prosecution involved the same benefits determined in his workers' compensation case. The

---

[6] We note that in analogous circumstances, a New York court in <u>Van Wie v. Kirk</u>, 675 N.Y.S.2d 469, 477 (N.Y. App. Div. 1998), concluded that there was no merit to a criminal defendant's contention that his criminal fraud prosecution involving his workers' compensation claim usurped the exclusive jurisdiction of the Workers' Compensation Board and constituted a collateral attack on the Board's decisions.

Circuit Court made this finding in support of its conclusion that Murray's criminal prosecution involved a controversy and dispute arising under the workers' compensation law and therefore the Director had original jurisdiction over it. Because we conclude that the Director does not have original jurisdiction over criminal prosecutions, resolving the State's challenge to the Circuit Court's finding is not necessary to our analysis.

In any event, we note that in similar circumstances, the Hawaiʻi Supreme Court held that an administrative decision did not have res judicata or collateral estoppel effect on a criminal prosecution. See State v. Alvey, 67 Haw. 49, 678 P.2d 5 (1984) (holding that administrative determination in prison disciplinary hearing did not have collateral estoppel or res judicata effect on subsequent criminal prosecution and did not prevent the State from litigating the same issue in a subsequent criminal prosecution).

CONCLUSION

We vacate the Circuit Court's Order Dismissing Indictment, and we remand the case for further proceeding consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, January 27, 2012.

On the briefs:

Brandon K. Flores
for Defendant-Appellee

Marcus B. Sierra
Deputy Attorney General
Department of the Attorney
    General, State of Hawaiʻi
for Plaintiff-Appellant

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

11